STAPLES, J.,
delivered the opinion of the court.
The questions involved in this case lie within a narrow compass and are of easy solution. The record *shows that John M. Evans was the trator of Joel Asberry, and as such made sale of the estate, or part of the estate, of his intestate. At that sale William L. Bernard became a purchaser of some of the property to the amount of a thousand dollars or more, and executed his bond to the administrator for the purchase money. At the time of these transactions or afterwards Bernard was the guardian of John G. Asberry, one of the distributees of the estate of Joel Asberry. His distributive share in that estate in the hands of Evans was not less than a thousand dollars. In this estate of things it was agreed between Evans and Bernard that the money due the ward in the hands of Evans as administrator should be appropriated to the payment of Bernard’s individual debt to Evans contracted in the purchase of the property. This arrangement was consummated, and Bernard as guardian, receipted to Evans for the amount due^ his ward as having been actually paid by Evans to him. The question before us is, whether this is a valid payment, sufficient to exonerate Evans from liability to the ward or his estate? The learned counsel for the appellant, in his argument here, insisted that if Evans had paid to Bernard the $1,000 due, the said Bernard might have become the borrower of the money and used it in the payment of his debt to Evans, and the transaction would be perfectly valid. And this being so, it was unnecessary for the parties to go through with the useless ceremony of paying over the money, and then paying it back again.
If the learned counsel’s premises are correct, his conclusion cannot be questioned. But it is true that a guardian has the right to appropriate his ward’s estate to the payment of his own debts? It is certainly well settled that an administrator or- executor cannot so use the assets, unless under very peculiar circumstances, *as where he is legatee or distributee, or other- [ j I wise in advance to the estate. The use of I the assets by the personal representative 1 I ' for his own private purposes, or for the payment of his own debts, is necessarily a misapplication of trust funds, and a breach of trust. When he so appropriates the money of the estate he thereby becomes a borrower, throwing upon his cestui que trust, and upon the sureties on his official bond, all the risks of his continued solvency. The duty of every fiduciary is to keep the trust fund separate and distinct from his own property or money, and to apply it in a due course of administration, or to invest it securely for the benefit of the parties entitled. By so doing it can be identified and followed in the event of his death or insolvency. When, however, the fiduciary uses the trust money for his private purposes, the fund is forever gone, and the cestui que trust must incur all the hazards of the fiduciaries’ insolvency. These are elementary principles; and it is a matter of some surprise they should have been so earnestly controverted at the bar. They apply to all fiduciaries, having trust funds in their hands, whether executors, administrators or guardians.
It is no less firmly established that a party who concerts or unites with a fiduciary in a misapplication of trust funds, or in any other act contrary to the duty of the fiduciary, becomes a particeps criminis, and will be held liable accordingly. And (he reason is, that the party receiving the assets in payment of a private debt necessarily has notice that the fiduciary is guilty of a misapplication. If, says Vice Chancellor Eeach, the nature of the transaction affords intrinsic evidence that the executor in the mortgage or sale is not acting in the execution of his duty, but is committing a breach of trust, as where the consideration of the mortgage or sale is a personal debt due from the executor to *the mortgagee or morgagee or purchaser being a party to the breach of trust, does not hold the property discharged of the trusts, but equally subject to the payment of debts and legacies as it would have been in the hands of the executor, t Lo-max on Ex’ors and Adm’rs, 565-6; Pinckard v. Woods, 8 Graft. 140.
[ I 1 In the case before us it was the duty of Evans, as administrator, to pay over to Bernard, as guardian, the distributive share of the ward, and it was the duty of Bernard to invest the fund to the best advantage. If the guardian, after receiving the money had wasted or misapplied it, parties dealing with him in ignorance that it was trust property, would of course not be responsible. But Evans knew that the guardian was using the ward’s money in paying his own debt: and he knew or must be held to know that the guardian was thereby misapplying the funds, and committing a breach of trust. The learned counsel says that Evans acted in entire good faith, without a suspicion of { anything improper in the transaction. It | may be so. It is wholly immaterial. The j law stamps the transaction as fraudulent, I however innocent the intention of the par-I ties — not actual fraud in this case, but fraud ' in law arising from a misapplication of *504 trust funds. And this is what, was meant by the learned judge of the circuit court in saying it was a “collusive transaction.” But even if as counsel contends, the learned judge had declared the transaction actually fraudulent, it is a matter of no sort of importance. We are not dealing with the reason of the court, but with its decree.
It appears, however, that the ward having died his administrator has brought suit at law, on the guardian's bond 'against the sureties — the guardian himself being insolvent. At the time the decree in the case *before us was rendered, the action at law was still pending, and undetermined. It is insisted, that the administrator having made his election to pursue the guardian and his sureties, cannot now proceed against Evans; and at all events the chancery court ought to have stayed its hand until the result of the action at law is determined. In the first place the rules of law in regard to the election of remedies have no application to the case. A creditor having two different securities, or two sets of obligors bound for his debt, may proceed against both at the same time, although he is entitled to but one satisfaction., According to the views already presented Evans having in his hands funds belonging to the ward, or to his administrator, is primarily bound for them, the guardian being insolvent. And so far as this doctrine carried, if the sureties of the delinquent fiduciary are compelled to make good the loss, they will be substituted to all the rights of the legatee or distributee against the party uniting with the fiduciary in the breach of trust. It was so held by this court in Pinckard v. Woods, 8 Gratt. 140. Without undertaking now to decide whether that rule will apply in the present case, it is sufficient to say the administrator cannot be delayed by a protracted controversy with the sureties of the guardian — he has his right of action against the party who has concurred in the breach of trust committed by the guardian, and therefore incurs the like liability.
The appellant, Evans, has less ground of complaint, because the circuit court, by its decree of 13th September, 1878, has provided that the appellant may prosecute the (action at law against the sureties of the guardian in the name of the. administrator to recover the alleged payment of one thousand dollars “if the said sureties are justly liable for the amount.”
*It only remains to notice the alleged error of the circuit court in refusing permission to the appellant to file his supplemental or amended answer.
The learned counsel for the appellant admits that this answer sets up no new matter, “but is only a little more full upon the points raised in the bill.” What good, then, was to be derived from it? Had it been filed it would not in the slightest degree change the aspect of the case or the result. If, therefore, any error was committed, as there was not in refusing permission to file the answer, the error was without prejudice to the appellant.
For these reasons we are of opinion the decree of the circuit court is right, and must be affirmed.
Decree affirmed.